UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
FREEDOM INVESTORS CORPORATION,          :
                        Plaintiff,      :
                                        :    11 Civ. 5975 (DLC)
            -v-                         :
                                        :    OPINION AND ORDER
KAHAL SHOMREI HADATH and SYDNEY V.      :
PINTER,                                 :
                        Defendants.     :
                                        :
----------------------------------------X

APPEARANCES:

For the Plaintiff:

Francis M. Curran
McCormick & O'Brien LLP
9 East 40th St., 4th Fl.
New York, NY 10016

For the Defendants:

Samuel Pinter, pro se
Kahal Shomrei Hadas
1340 E. 9th St.
Brooklyn, NY 11230


DENISE COTE, District Judge:

        Freedom Investors Corp. ("Freedom") has filed this petition

for confirmation of an arbitration award pursuant to § 9 of the

Federal Arbitration Act, 9 U.S.C. § 9.  The award was entered in

favor of Freedom and against Kahal Shomrei Hadath ("Kahal") and

Sydney V. Pinter ("Pinter") on March 22, 2011.  For the

following reasons, the petition is granted.

BACKGROUND

Freedom is a securities broker-dealer and a member firm of the Financial Industry Regulatory Authority ("FINRA"). Kahal is a not-for-profit religious entity controlled by Pinter.

According to Freedom, Kahal opened a brokerage account ("the Kahal account"), directed and controlled by Pinter, with Leonard Dunn ("Dunn") of EZ Stock, Inc., in December 2003. Dunn subsequently joined Freedom, transferring his client accounts including the Kahal account. Southwest Securities, Inc. ("Southwest"), was Freedom's clearing firm, and Freedom extended margin credit from Southwest to the Kahal account.

In July 2008, Kahal and Pinter used margin credit to purchase 4,000 shares of preferred stock in Washington Mutual ("WaMu"). On September 29, 2008, however, the price of WaMu preferred stock plunged to one dollar per share, prompting a margin call by Southwest. When Kahal and Pinter failed to deposit additional funds in the Kahal account, Southwest liquidated the account's remaining holdings. Pursuant to its clearing agreement with Southwest, Freedom paid the remaining margin debt of $149,222.85. Freedom then sought recovery of this amount from Kahal and Pinter.

The parties submitted the dispute to FINRA Dispute Resolution ("FINRA DR") arbitration.[1]  In accordance with FINRA rules, Freedom, Kahal, and Pinter each signed a "Submission Agreement" agreeing to be bound by the outcome of the arbitration.  The FINRA arbitration proceeded with an in-person hearing on March 2, 2011.  All parties attended.

The decision of the three-arbitrator panel issued on March 22, 2011 ("the Award").  The Award found Kahal and Pinter jointly and severally to Freedom for $149,223.00 in damages, plus interest at 8% from October 1, 2008 until March 22, 2011.  It additionally ordered Kahal and Pinter jointly and severally to pay Freedom $5,000.00 as a sanction for failure to produce documents during the arbitration's discovery phase.[2]  Finally, it denied in full counterclaims that Kahal and Pinter had asserted against Freedom.  FINRA delivered copies of the Award to the parties on March 22.  Kahal and Pinter have thus far failed to comply with the Award.

On August 25, 2011, Freedom filed this petition to confirm the arbitration award entered in its favor on March 22.  The summons and complaint were served on Kahal and Pinter on September 26.  By Order of October 12, Freedom was instructed to

---

[1] FINRA DR is a wholly-owned subsidiary of FINRA.

[2] The total award sought by Freedom in this action is therefore $183,724.18.

serve any additional materials in support of its petition by October 25, and Kahal and Pinter were instructed to serve any opposition to the petition by November 15. No opposition was received by the Court on or before November 15.

On November 22, Freedom filed reply papers, and included in its reply was a copy of a faxed letter Freedom stated it received from Pinter on November 22. While the letter was faxed to Freedom's counsel, it is addressed to the Court. Pinter states that he "would like to have the opportunity to articulate in person why the final judgment should not be entered against [Pinter] personally." The Court did not receive a copy of this letter directly from Pinter or from any party acting as Pinter's counsel.

By Order of December 21, the defendants were given a final opportunity to oppose Freedom's petition. On January 4, 2012, the Court received an undated letter from Pinter ("the January 4 Letter"), styled a "Motion for Oral Arguments to Set Aside Arbitration Award". Construing the letter as an opposition to Freedom's petition and a cross-motion to vacate the Award, the Court instructed the defendants to make any further submissions by January 13. No further submissions have been received. On January 27, Freedom opposed the motion to vacate.

DISCUSSION

        In the January 4 Letter, Pinter lists several arguments for
why Freedom's motion to confirm the Award should be denied and
Pinter's motion to vacate the Award should be granted:  (1) Dunn
represented to the defendants "that the preferred stock is
bankruptcy shock proof and that [Dunn] did the research and due
diligence on this investment," and the defendants relied upon
Dunn's representations; (2) Dunn "stressed any [sic] times that
the preferred stock had no connection to the commons [sic] stock
and [the defendants] had no reason to be apprehensive"; (3) Dunn
"forged items on the initial application"; (4) the defendants
lost more than $922,000 "based on the sole negligence" of Dunn;
and (5) Dunn testified at the arbitration hearing that he had
been "sanctioned by the SEC and suspended for misrepresenting
[sic] other clients," information previously unbeknownst to the
defendants.  Additionally, Pinter seeks to vacate the Award on
the grounds that during the arbitration hearing, Freedom's chief
executive officer Joel Blumenschein ("Blumenschein") testified
that he is a member of the FINRA Board of Governors.  According
to Pinter, he then requested that the three arbitrators on the
FINRA panel recuse themselves.  That request was presumably
denied.

        The FAA provides a "streamlined" process for a party
seeking "a judicial decree confirming an award, an order

vacating it, or an order modifying or correcting it." <u>Hall</u> <u>Street Assocs. L.L.C. v. Mattel, Inc.</u>, 552 U.S. 576, 582 (2008). "Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected." <u>D.H. Blair & Co., Inc. v. Gottdiener</u>, 462 F.3d 95, 110 (2d Cir. 2006) (citation omitted).  A court's review of an arbitration award is "severely limited" so as not unduly to frustrate the goals of arbitration, namely to settle disputes efficiently and avoid long and expensive litigation.  <u>Willemijn</u> <u>Houdstermaatschappij, BV v. Standard Microsystems Corp.</u>, 103 F.3d 9, 12 (2d Cir. 1997) (citation omitted).

"[D]istrict courts should . . . treat a petitioner's application to confirm or vacate an arbitral award as akin to a motion for summary judgment."  <u>City of New York v. Mickalis Pawn</u> <u>Shop, LLC</u>, 645 F.3d 114, 136 (2d Cir. 2011) (citation omitted). "A party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high."  <u>D.H. Blair & Co.</u>, 462 F.3d at 110.  The party moving to vacate an award bears "the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law."  <u>Wallace v. Buttar</u>, 378 F.3d 182, 189 (2d Cir. 2004) (citation omitted).  Thus, a party seeking

vacatur of an arbitrator's decision "must clear a high hurdle."

Stolt-Nielson S.A. v. AnimalFeeds Int'l Corp., --- U.S. ---, ---,
130 S. Ct. 1758, 1767 (2010).

> The arbitrator's rationale for an award need not be
> explained, and the award should be confirmed if a
> ground for the arbitrator's decision can be inferred
> from the facts of the case.  Only a barely colorable
> justification for the outcome reached by the
> arbitrators is necessary to confirm the award.

D.H. Blair & Co., 462 F.3d at 110 (citation omitted).

As an initial matter, Pinter's motion to vacate must be
dismissed as untimely.  "Notice of a motion to vacate, modify,
or correct an award must be served upon the adverse party or his
attorney within three months after the award is filed or
delivered."  9 U.S.C. § 12.  By the clear terms of the FAA, "a
party may not raise a motion to vacate, modify, or correct an
arbitration award after the three month period has run, even
when raised as a defense to a motion to confirm."  Florasynth,
Inc. v. Pickholz, 750 F.2d 171, 175 (2d Cir. 1984).  The Award
was issued March 11, 2011; Pinter did not move to vacate the
Award until January 4, 2012.

Even if Pinter's motion were timely, it would still be
denied, and Freedom's petition granted.  The FAA provides only
narrow, enumerated grounds for a district court to vacate an
arbitration award.  Under § 10(a) of the FAA, a court may vacate
an award:

> (1)  where the award was procured by corruption, fraud
> or undue means;
> (2)  where there was evident partiality or corruption
> in the arbitrators, or either of them;
> (3)  where the arbitrators were guilty of misconduct
> in refusing to postpone the hearing, upon sufficient
> cause shown, or in refusing to hear evidence pertinent
> and material to the controversy; or of any other
> misbehavior by which the rights of any party have been
> prejudiced; or
> (4)  where the arbitrators exceeded their powers, or
> so imperfectly executed them that a mutual, final, and
> definite award upon the subject matter submitted was
> not made.

9 U.S.C. § 10(a); see Schwartz v. Merrill Lynch & Co., Inc.,

--F.3d--, 2011 WL 5966616, at *6 (2d Cir. 2011).  "In addition,

as judicial gloss on these specific grounds for vacatur of

arbitration awards, [the Second Circuit] ha[s] held that the

court may set aside an arbitration award if it was rendered in

'manifest disregard of the law[.]'"  Id.

     Several of Pinter's arguments in the January 4 Letter

raise, at most, the question of whether the arbitration panel

acted in manifest disregard of the law.[3]  "[A]wards are vacated

on grounds of manifest disregard only in those exceedingly rare

instances where some egregious impropriety on the part of the

arbitrator is apparent."  T. Co Metals, LLC v. Dempsey Pipe &

Supply, Inc., 592 F.3d 329, 339 (2d Cir. 2010) (citation

omitted).  To vacate an arbitration award based on manifest

---

[3] Pinter's arguments that Dunn misrepresented the nature of the
stock purchased by the defendants were presented to the
arbitration panel as the basis for counterclaims.  The Award
states that the defendants' counterclaims were denied.

disregard of the law, a party must make a "two part showing":
(1) "whether the governing law alleged to have been ignored by
the arbitrators was well defined, explicit, and clearly
applicable,"; and (2) "whether the arbitrator knew about the
existence of a clearly governing legal principle but decided to
ignore it or pay no attention to it." Jock v. Sterling Jewelers
Inc., Inc., 646 F.3d 113, 121 n.1 (2d Cir. 2011) (citation
omitted).  Thus, an award "should be enforced, despite a court's
disagreement with it on the merits, if there is a barely
colorable justification for the outcome reached." T. Co Metals,
592 F.3d at 339 (citation omitted).  Where, "the arbitrators do
not explain the reason for their decision," it should be upheld
if the court "can discern any valid ground for it."
STMicroelectronics, N.V. v. Credit Suisse Securities (USA) LLC,
648 F.3d 68, 78 (2d Cir. 2011) (citation omitted).

Pinter has failed to carry his significant burden of
showing that the arbitration panel acted in manifest disregard
of the law.  Pinter merely raises here arguments considered and
rejected by the panel.  He has not shown the panel's intentional
defiance of the law, as required for vacatur under a manifest
disregard theory.  STMicroelectronics, 648 F.3d at 78 (citation
omitted).[4]

---

[4] Several of the arguments raised by Pinter deal with alleged
misrepresentations made by Dunn, upon which the defendants

Pinter also seeks to vacate the Award based on testimony during the arbitration that Blumenschein was a member of FINRA's Board of Governors.  According to Pinter, Blumenschein's testimony raised the specter of arbitrator bias against the defendants because the arbitration was convened by FINRA DR.

Under § 10(a)(2) of the FAA, a court may vacate an arbitration award "where there was evident partiality or corruption in the arbitrators, or either of them[.]"  9 U.S.C. § 10(a)(2).  "[A]n arbitrator is disqualified only when a reasonable person, considering all of the circumstances, would have to conclude that an arbitrator was partial to one side." Applied Industrial Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S., 492 F.3d 132, 137 (2d Cir. 2007).  "To vacate an arbitration award where nothing more than an appearance of bias is alleged would be automatically to disqualify the best informed and most capable potential arbitrators."  Int'l Produce, Inc. v. A/S Rosshavet, 638 F.2d 548, 552 (2d Cir. 1981); see also Lucent Technologies Inc. v. Tatung Co., 379 F.3d 24, 31 (2d Cir. 2004) ("[S]pecific areas tend to breed tightly

---

relied in opening the account and executing trades. Section 10(a)(1) of the FAA provides that a court may vacate an arbitration award "where the award was procured by corruption, fraud, or undue means." 9 U.S.C. § 10(a)(1).  Pinter does not argue that the Award was procured by fraud.  Indeed, the January 4 Letter is clear that all of Pinter's allegations of fraud in connection with account activities were aired before the arbitration panel.

knit professional communities.  Key members are known to one another, and in fact may work with, or for, one another, from time to time." (citation omitted)).

Pinter has raised no credible argument of evident partiality on the part of the arbitrators on the panel. Blumenschein's service on FINRA's Board of Governors is insufficient to meet the objective test for assessing bias. Pinter has not made any showing that an individual member of the FINRA Board of Governors, or indeed the Board of Governors as a whole, has any influence over the selection of FINRA DR arbitrators, their compensation, or their assignment to panels.[5] At the very most, he has raised the specter of "an appearance of bias", insufficient grounds for disturbing an arbitration award. See Local 814, Intern. Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America v. J & B Systems Installers & Moving, Inc., 878 F.2d 38, 41 (2d Cir. 1989) ("[W]hile we do not require proof of actual bias, the reasonable person standard does require more than speculation that amounts to a claim that there is an 'appearance of bias.'").

---

[5] Arbitrators in FINRA DR arbitrations are selected using FINRA DR's Neutral List Selection System, a computer program that generates random lists of panelists for each arbitration.  FINRA Code of Arbitration Procedures, Rule 12400(a).  The parties select their panel through striking and ranking arbitrators on the random lists.  Id.

Freedom has sufficiently supported its petition and demonstrated that there is no question of material fact. Therefore, the petition to confirm the Award is granted.

CONCLUSION

Freedom's motion to confirm the arbitration award against the defendants is granted.  Pinter's petition to vacate the arbitral award is denied and the Clerk of Court shall enter judgment for Freedom for the sum of $183,724.18 and costs.  The Clerk of Court shall close the case.

SO ORDERED:

Dated:    New York, New York
          February 7, 2012

                              _____
                                     DENISE COTE
                              United States District Judge

12

Copies Mailed To:

Francis M. Curran
McCormick & O'Brien LLP
9 East 40th St., 4th Fl.
New York, NY 10016


Samuel Pinter
Kahal Shomrei Hadas
1340 E. 9th St.
Brooklyn, NY 11230